IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Helen J. Cummings,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Bank of America, N.A.,<br><br>　　　　　Defendant. | Civil Action No.6:08-2236-HMH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 68.] The plaintiff has pled a claim for retaliation, in violation of the Americans with Disabilities Act (ADA).[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

# **FACTUAL BACKGROUND**

The plaintiff began her employment with what is now Bank of America in June 1976. (Pl. Dep. at 8.) The plaintiff was eventually transferred to the defendant's Mauldin Banking Center located on West Butler Road around the year 2000 or 2001. *Id*. at 12-13. At the time the plaintiff was transferred to the Mauldin Banking Center, she was working as the center's customer service manager. *Id*. at 12. That position was converted into an

---

[1] The plaintiff also pled a claim for civil conspiracy, which was voluntarily dismissed, on March 20, 2009. [Doc. 63.] In her Complaint, Amended Complaint and Second Amended Complaint, the plaintiff also purported to assert a claim for retaliation under Section 503 of the Equal Pay Act (EPA). (See, e.g., Second Amend. Compl. ¶ 5.) However, no such statutory provision exists, and the plaintiff has presented no evidence or argument in support of any such claim under the EPA, in response to the defendant's challenge to it (see Mem. Supp. Summ. J. at 16 n.8). The Court, therefore, considers that claim abandoned.

assistant banking center manager position, which was the position the plaintiff held when her employment was terminated in December 2005. *Id*. at 14. The plaintiff was responsible for managing the Mauldin Banking Center in the absence of the banking center manager. *Id*. at 13-14.

In February 2005, Josie Stewart, the banking center manager of the Mauldin Banking Center, told the plaintiff that the Bank wanted her to transfer to the Pleasantburg Banking Center. *Id*. at 30. The plaintiff declined the transfer stating that she had panic attacks, which would make it impossible for her to drive to that center and, therefore, would inconvenience her family members who would be responsible for driving her. (Pl. Dep. at 30.) The defendant made a second request of the plaintiff, that same day, for her to transfer, which she declined for the same reasons. *Id*. The next day, the defendant again asked the plaintiff to consider the transfer and offered her additional money if she accepted. *Id*. Notwithstanding, she declined. *Id*.

Six months later, the plaintiff received a verbal coaching from Michael Cote, the consumer market executive for the region, in regards to the plaintiff's preparation of the work schedule for the center's employees, in which she improperly scheduled future overtime. (Pl. Dep. at 46-49; Cote Dep. at 27.) During that coaching session, the plaintiff was further reprimanded for answering the telephone, during the session, over the instruction of Cote not to. (Pl. Dep. at 46, 49.)

Over the next three months, the plaintiff received three separate customer complaints from two different customers. (J. Stewart Dep. at 48-49, 52-53; Def. Exs. F, I.) As a result of the first two complaints, the plaintiff was given a written warning. (J. Stewart Dep. at 15.) Thereafter, the plaintiff had subsequent and improper contact with one of the complaining customers. (Pl. Dep. at 87-88, 94-95.)

The defendant represents that, as a result of this last complaint, and in consideration of the prior ones, the plaintiff's employment was terminated, on December 5, 2005. The plaintiff complains that the termination was in retaliation to her refusal of the transfer to the Pleasantburg Banking Center.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

3

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.   ADA Retaliation Claim[2]

As stated, the plaintiff contends that the defendant retaliated against her for refusing a transfer to the Pleasantburg Banking Center on account of her panic attacks. She contends that her refusal was protected activity under the ADA and that the defendant took certain adverse employment actions against her as a result, including a verbal coaching, written reprimand, and termination of her employment.

---

[2] As far as the Court can tell, the plaintiff has not pled any claim for a failure to accommodate. (See generally Compl. & Pl. Resp. Summ. J.)

4

Section 503(a) of the ADA prohibits retaliation by an employer against an employee who enforces his rights under the ADA. See 42 U.S.C.A. § 12203(a). To prove her case, the plaintiff has permissibly employed the burden shifting scheme established by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). *See Reeves v. Nuvox Communications*, 2009 WL 4016617 (D.S.C. November 18, 2009) (Herlong, J.) That paradigm requires that the employee first establish a *prima facie* case of retaliation by a preponderance of the evidence. *See Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 60 (4th Cir. 2002). To do so, a plaintiff must prove that (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id*.; *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). If the plaintiff satisfies this burden, then her employer must articulate a legitimate non-retaliatory reason for its action. *See Lamb*, 33 Fed. Appx. at 60. Should the employer do so, then the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is pre-text and that the real reason for the employer's action was to retaliate against him for having taken the protected action of requesting an accommodation. *Id*.

As will be discussed, the Court would recommend that the plaintiff cannot demonstrate that the defendant's non-retaliatory reasons for the plaintiff's discipline and termination were false or otherwise pretextual, even were she able to establish her *prima facie* case. For thoroughness, however, the Court gives the following consideration to that initial stage.

**A.** ***Prima Facie* Case**

    **1.** **Protected Activity**

The defendant first contends that the plaintiff cannot establish the first element of her *prima facie* case that she engaged in any protected activity. The defendant rightly emphasizes that, to do so, she must show that she actually requested what might be

5

considered a reasonable accommodation for an alleged disability. *See Parkinson v. Anne Arundel Med. Ctr.*, 79 Fed. Appx. 602, 604 (4th Cir. 2003) (involving a claim for retaliation based on an alleged request to accommodate). The plaintiff, therefore, must have, "at minimum, communicat[ed] . . . a wish for accommodation of his disability." *Id*. But, the Fourth Circuit has agreed that a "request for accommodation need not, in all cases, 'be in writing, be made by the employee, or formally invoke the magic words reasonable accommodation.'" *Id*. at 604-05 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999)) (omitting quotation).

As stated, while the plaintiff was working on the teller line, a Josie Stewart informed her the Bank wanted to transfer her to the Pleasantburg branch. (Pl. Dep. at 30-31.) The plaintiff contends that she told Stewart that she did not want to be transferred and that she was requesting not to be transferred as an accommodation for her medical condition. *Id*.; *see also id.* at 25-29 (describing her medical condition). Specifically, the plaintiff testified that she told a T.L. Stewart, that same day, that she was declining the transfer because she "had panic attacks and . . . didn't drive to that area . . . ." *Id*. at 30. She indicated to him that a transfer to the Mauldin branch would require that a family member drive her to work everyday, which she characterized as an inconvenience. *Id*. at 30-31.

The defendant argues that the plaintiff did not make clear that her rejection was based on any disability but only emphasized reasons of convenience. The defendant claims that at the time of the transfer request, she had never presented any medical documents to the Bank regarding any alleged disability or associated impairments (see Pl. Dep. at 34- 35) and that no one at the Bank had any reason to believe she was disabled, *id*. at 117.

The Court believes that the matter is one of credibility and, therefore, an issue of fact for the jury. The plaintiff has specifically testified that she told Stewart that the *panic attacks,* themselves, made driving to that location impossible and the transfer, therefore,

6

inconvenient. *Id*. at 30. To the Court, this is evidence which "link[s] explicitly [the] refusal [of the transfer]. . . to limitations imposed by h[er] *impairment*" from which a jury could find that a request for accommodation had been made. *Parkinson*, 79 Fed. Appx. at 605 (emphasis added). The plaintiff did not simply raise convenience as a shield as one might if they were aggravated by the travel time or traffic. The transfer was inconvenient specifically *because* of her alleged physical condition. She claims to have made that clear. It may be true that, as the defendant contends and contrary to the plaintiff's suggestions, that the defendant had no prior notice of any disability or associated limitations. This fact appears of no consequence, however. The plaintiff is not required to establish that the opposed conduct was actually an ADA violation, she must only establish that she had a reasonable, good-faith belief that the opposed conduct violated the ADA. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir.2002); *see also Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003) (Title VII). That belief must be both subjectively held and objectively reasonable. *See Peters*, 327 F.3d at 321. The plaintiff represents that she subjectively believed that she was refusing the transfer for reasons of her panic attacks and that the defendant pressured her to take the transfer, notwithstanding. It seems, that as an objective matter, it might be concluded by a jury that a person in her position would have reasonably believed that the defendant was violating the law by not taking into account her medical condition.

### 2. Adverse Employment Action

The plaintiff has identified three alleged retaliatory acts for purposes of establishing an adverse employment action: (1) Cote's August 30, 2005, coaching session with the plaintiff; (2) Josie Stewart's November 16, 2005, written warning to the plaintiff; and (3) the December 5, 2005, termination of her employment. (Pl. Dep. at 45-50, 76-77, 113-14.) The defendant contends that the first two do not qualify as adverse employment actions.

7

In order to show that a plaintiff has suffered an adverse employment action in the context of a retaliation claim, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from" engaging in the protected activity. *Burlington Northern & Santa Fe Ry Co. v. White*, 126 S.Ct. 2405, 2415 (2006). The United States Supreme Court specifically noted that their use of the phrase "materially adverse" was intended to separate significant harms from trivial ones. *Id*. The standard is objective and should be considered in light of all of the circumstances and from the perspective of a reasonable person in the plaintiff's position. *Id*. at 2417.

In the wake of *Burlington*, some courts have concluded that, in retaliation cases, a reasonable worker might be dissuaded from engaging in protected activity if she knows that she will "face a written warning or a verbal and physical confrontation." *Snow v. Khazeni*, 2009 WL 1751582, at *5 (M.D.N.C. June 19, 2009). *But Cf. Richardson v. Horry County*, 2008 WL 906559, at *9 (D.S.C. March 31, 2008) (finding that written and verbal reprimands do not rise to level of adverse employment action in disparate treatment case because of the heightened standard, not applied in retaliation cases according to *Burlington*, that the act must affect the terms, benefits, or conditions of employment); Dawson v. U.S., 549 F. Supp. 2d 736, 741-42 (D.S.C. 2008) (holding same as *Richardson*). Other courts, however, have concluded that to honor the materiality component of the *Burlington* standard, there must exist evidence of some injury or harm. *See Nagle v. RMA, The Risk Management Ass'n*, 513 F. Supp. 2d 383 (E.D. Pa. 2007). While a closer call, even negative written warnings or reviews have generally been rejected as not sufficiently adverse to constitute an adverse employment action. *See Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F.Supp.2d 233, 252 (D. Conn. 2008) (summarizing decisions). While, the Court might be inclined towards the outcome in *Snow* that a reasonable worker might be chilled in their decisionmaking if they are under threat of a written or verbal reprimand made permanent

8

to their record, the undersigned need not decide it. First, there exists at least one adverse employment action: the termination of the plaintiff's employment. That action is sufficient to satisfy the second element of the plaintiff's case (although, alone, will be ultimately insufficient for want of causal connection, as will be discussed *infra*). Moreover, the Court has concluded, below, that the plaintiff has not created any issues of fact as to the falsity of the defendant's non-retaliatory reasons for the verbal coaching and written warning and, therefore, cannot prevail even if they constitute materially adverse actions.

### 3. Causation

If the district court finds that the verbal coaching and the written warning do, in fact, constitute adverse employment actions, the Court would recommend that the plaintiff has sufficient evidence of causation to satisfy the final element of her *prima facie* case, over the objection of the defendant. The Fourth Circuit has held that, to establish a *prima facie* case, "very little evidence of a causal connection is required" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). *But see Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("[T]hirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.") Without a temporal proximity, the plaintiff must produce some "other evidence" establishing causation. *Causey*, 162 F.3d at 803.

The temporal proximity of 5 months between the March 2005 refusal and the August 30, 2005, verbal coaching seems sufficient to establish the causal element. *See Carter*,

33 F.3d 450 (5 months). The eight to ten month lag between her refusal and both the written warning and ultimate termination, on November 16, 2005, and December 5, 2005, respectively, is likely too long a period, on its own, to support any inference of causality between those events. *See Booth v. Maryland*, 2009 WL 2158096, at *8 (4th Cir. 2009) (9 months). Standing alone, the timing of neither event would satisfy the causal element of her claim.

The Court, however, believes that the jury may still consider all three events as being related to the plaintiff's initial refusal. The Court has not found any case, in support, but it seems reasonable that a jury could find that where an adverse employment action was taken close enough in time to an employee's engagement in protected activity such that a causal link might be inferred, then subsequent adverse employment actions, reasonably close in time to the first, might be permissibly viewed as part of a pattern or series of actions taken in retaliation. In a manner of speaking, the first adverse action would constitute "other evidence" establishing causation for subsequent adverse actions, more remote in time. *Causey*, 162 F.3d at 803

Assuming that the verbal coaching and the written warnings were adverse employment actions, the plaintiff has created issues of fact as to the third element of her *prima facie* case.

### B. Legitimate, Non-Retaliatory Reason

To the extent the district court agrees that the plaintiff has established a *prima facie* case, the defendant has the burden to produce a legitimate, non-retaliatory reason for taking the adverse actions it did. *See Lamb*, 33 Fed. Appx. at 60. The defendant submits that Cote coached the plaintiff on August 30, 2005, because, among other things, she had prescheduled certain Bank associates, including herself, for overtime, and because, contrary to his instructions to her, she answered her office telephone in the middle of her coaching session with him. The defendant further submits that Stewart gave the plaintiff

a written warning on November 16, 2005, because, among other things, Stewart had received complaints from two customers regarding the plaintiff's conduct, and the plaintiff had made banking center associates feel inadequate in front of customers and other associates. Lastly, the defendant states that it terminated the plaintiff's employment because of the plaintiff's continuing and inappropriate interactions with bank customer, Leah Bolan. "Job performance" and employee malfeasance is widely recognized as a "valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

### C.     **Pretext**

Because the defendant has proffered a legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reasons were, in fact, unlawful. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144.

#### 1.     **Verbal Coaching**

On August 30, 2005, Cote visited the Mauldin Banking Center as part of his duties as consumer market executive of the Foothills Region. (Pl. Dep. at 46.) During his visit, Cote asked to review the schedule the plaintiff had prepared for the following week. *Id*. As the plaintiff acknowledges, she was responsible for "making the schedule for the entire office." *Id*. at 13. Cote observed that the plaintiff had scheduled overtime for herself and others prior to having actually worked it, a practice the defendant expressly seeks to avoid. (Cote Dep. at 27.) The plaintiff's only rejoinder is that she complained to Cote that the

11

schedule was not "complete" at the time that he reviewed it. (Pl. Dep. at 49.) But she does not actually dispute that she had scheduled overtime as alleged by Cote and the defendant. *Id*. Accordingly, the Court cannot understand how her persistence now – that Cote would not entertain her excuse that the schedule was incomplete – somehow makes the defendant's reason for the verbal coaching false or pretextual. A plea based on incompletion might have made some sense if the plaintiff's draft schedule *lacked* something which should have been *included*. She might have later cured it. The situation, however, was the reverse. She had already *included* something which was impermissible. There was simply nothing false about Cote's critique. The fact that Josie Stewart had yet to review and approve the schedule, as the plaintiff contends (Pl. Dep. at 46), does not make Cote's coaching improper or false. At worst, he simply beat Stewart to the point, assuming she would have ever made it herself.

As to the second basis for the verbal coaching, Cote reprimanded the plaintiff for answering the telephone during his conversation with her. The Court easily rejects that the plaintiff has any evidence of pretext on this matter. Her own deposition testimony admits of her decision to answer the telephone over his instruction to the contrary. (Pl. Dep. at 46.) Her reasons for doing so are really quite immaterial. She was told not to and did. *Id*. The defendant's proffer is not false.

The plaintiff has offered no evidence of pretext as to the verbal coaching.

### 2. Written Reprimand

On November 16, 2005, Josie Stewart met with the plaintiff to give her a written warning regarding her behavior towards two customers. (Pl. Dep. at 67 & Ex. 5.) The Court will address each of the allegations in turn.

On Friday, October 7, 2005, a customer by the name of Terry Boggs, came to the Mauldin Banking Center. Boggs came to the Mauldin Banking Center on that day to access his safe deposit box. As a Mauldin Banking Center associate was in the process

12

of taking Boggs to his safe-deposit box, the plaintiff called out from her office and across the lobby: "Make sure you get his ID, we do not know him actually." (Stewart Dep. at 27.) Boggs and his wife were, in fact, well known to the staff of the Mauldin Banking Center, *id*. at 26-27, including the plaintiff, although she told Stewart that "she didn't care for him," *id*. at 49-50. Boggs complained to the regional market team about the way he had been treated by the plaintiff. *Id*. at 48-49, 52. Boggs also complained directly to Stewart that he "didn't appreciate the service that he had received" and that he thought the plaintiff's conduct was unprofessional. *Id*. at 52-53.

The plaintiff complains that this basis for the warning was pretextual insofar as asking for the customer's identification prior to allowing the customer in the safety deposit box was company protocol. (Stewart Dep. at 15; Pl. Dep. at 75-76.) But, this response of the plaintiff seems less than genuine. The plaintiff was not reprimanded for seeking identification from Boggs; she was given a warning for unprofessional conduct (Def. Ex. H), including "unprofessional yelling across the lobby . . . ." (Stewart Dep. at 27.) The plaintiff does not dispute that she yelled across the lobby, as alleged. In truth, she hardly addresses the incident. (See Pl. Resp. at 15.) There is no evidence of pretext as to this basis for the written warning.

The second incident, which formed the basis of the written warning, also occurred on October 7, 2005. (Pl. Dep. at 82.) A Leah Bolan complained that the plaintiff "threw items" at her and spoke to her very "rudely." (Def. Ex. F.)

The plaintiff's response is twofold. First, she highlights the deposition testimony of Bolan, who seems to dispute that she ever complained that the plaintiff "threw items" at her. (Bolan Dep. at 66-67.) What is undisputed, however, is that Bolan *did* make an online complaint, *id*. at 58, concerning the plaintiff's "rude" conduct, *id*. at 57. Moreover, the difference is really a semantical one. While Bolan denies that she ever would have used the word "threw," she admits that the plaintiff "tossed" the deposit ticket and "slammed it

13

down." *Id*. at 67. These are differences without distinction. Bolan's qualification does not make the defendant's stated bases for the warning false. But, even if the defendant was somehow mistaken in its interpretation of Bolan's complaint, the mistake is of no moment. The inquiry is not whether the decision was "wise, fair or correct,' but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs.'" *Kaster v. Safeco Ins. Co. Of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002). There is no evidence other than the defendant genuinely believed that the plaintiff had treated Bolan unprofessionally and rudely. (Def. Ex. F); *see Brown v. Conopco, Inc.*, 2007 WL 3224586, at *8 (D. Md. October 24 2007) ("What matters is that Unilever honestly believed she was, and believed Mr. Brown had fraudulently claimed the day as FMLA leave when in fact it was not being used for that purpose."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1156-66 (1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

Second, the plaintiff complains that the defendant's reasons for the written reprimand were pretextual insofar as another teller, Natasha Etoukwu, was also involved in the incident with Bolan but was not given a written warning. Etoukwu, however, was not similarly situated to the plaintiff. For one, two customer complaints were made against the plaintiff; it was Etoukwu's first (J. Stewart Dep. at 27-28.) Moreover, the plaintiff was Etoukwu's supervisor. (Pl. Dep. at 13-14.) Differential treatment, therefore, was permissible in light of the plaintiff's greater responsibility as a supervisor. *See Mathis v. Perry*, 996 F. Supp. 503, 520 n.41 (E.D. Va. 1997) ("It is natural to assume that a person holding a managerial position, . . . would be held to a higher standard of conduct than would her subordinates, who hold non-managerial positions.")

The plaintiff has not brought forward any evidence of pretext as to the second reason for the defendant's November written reprimand.

14

### 3. Termination

In early December 2005, approximately two weeks after Josie Stewart met with the plaintiff to discuss the written warning, she was notified that Bolan had made a second, complaint regarding additional conduct of the plaintiff. (J. Stewart Dep. at 44.) Bolan complained about two encounters with the plaintiff since the initial incident in early October. Bolan reported that, during a subsequent visit to the Mauldin Banking Center, she "ended up back in [plaintiff's] office, and [plaintiff] closed the door and asked Leah Bolan about the complaint, wanted to know what she had done." (J. Stewart Dep. at 44; Pl. Dep. at 87.) Bolan reported that the plaintiff asked her to withdraw the October complaint she had made against the plaintiff. *Id*. at 44-45; (Def. Ex. I.) Bolan further reported that a day or so later, the plaintiff telephoned Ms. Bolan at her place of work, "saying that she would be glad to pick up a [retraction] letter if [Ms. Bolan] wanted to write that." *Id*. at 44-45; (see also Def. Ex. I; Pl. Dep. at 89.) When contacted by the defendant's vice president, Lisa Wilson, Bolan was actually crying for fear that her accounts at the defendant's bank might be closed because of her complaints against the plaintiff. (Def. Ex. I at 2.) She was assured that they would not be. *Id*.

Subsequently, Josie Stewart; Pam Leneave, a consumer market manager; and the defendant's Advice and Counsel representative all agreed that the Bank should terminate the plaintiff's employment based on these customer complaints. *Id*. On December 5, 2005, Leneave and Stewart met with the plaintiff, and informed her that her employment was being terminated for her improper interactions with Bolan. (Pl. Dep. at 19, 90; Leneave Aff. ¶10.) During that meeting, the plaintiff admitted that she had contacted Bolan after she received a written warning from Stewart regarding Bolan's complaint and acknowledged discussing with Bolan whether she would withdraw her complaint. *Id*. at ¶10.

As far as the Court can tell, the plaintiff makes no attempt to demonstrate that the defendant's reason for termination – the plaintiff's continued and improper contact with

15

Bolan – was pretextual. (Pl. Resp. at 16-17.) There is literally no attempt to dispute the veracity of her contact with Bolan made after the written warning had been issued. As discussed, she admitted both to the incidents and to their impropriety (Pl. Dep. at 95).

The plaintiff has failed to bring forward any evidence from which a reasonable jury could conclude that the reasons for her termination, or for any of the other actions of the defendant were pretextual. Her ADA claim, therefore, fails as a matter of law.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment be GRANTED. All claims should be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

December 9, 2009
Greenville, South Carolina